BRADFORD S. KIMBALL and others,

*vs.*

MAYNARD SUMNER, and others.

*Pleading. Rents of the real estate of a deceased insolvent, before sale, belong to his heirs.*

The rents and profits of the real estate of a deceased insolvent debtor, until it is sold for the payment of debts, belong to his heirs at law.

An administrator, who, without any agreement or understanding with the heirs, has collected such rents, may be sued for them by the heirs, jointly or severally, upon a count for money had and received.

In an action so brought the administrator cannot deduct from the rents collected by him, sums paid by him for insurance, or to discharge mechanics' liens, since these are charges upon the real estate itself, and not on the rents and profits. Nor, for the same reason, can he deduct any part of annuities paid by him.

Though the heirs may sue severally, or all may join, two or more cannot sue jointly, if there be other heirs not joined in such action.

ON REPORT.

ASSUMPSIT upon a count for money had and received, with a count in case, charging the defendants as bailiffs and receivers of the plaintiffs.

The defendants are administrators of the estate of the late Alfred H. Kimball, who died insolvent, and this action was instituted, by three out of four of his children and heirs at law, to recover the rents and profits of the real estate of the intestate, accruing between the day of his death (Jan. 12, 1866,) and the date of the writ (Feb. 26, 1872,) and received by the defendants in their said

capacity, amounting to $10,545.40, exclusive of interest, no part of which has been paid to the heirs, who were minors having no guardians, at the time of their father's death.

The administrators paid for repairs, taxes, insurance, and to the widow of the deceased for her one-third of the rents and profits, to the widow of the late Iddo Kimball an annuity charged upon the real estate, and for their own commissions, $8,866.79 ; also, to discharge five lien claims upon the homestead the further sum of $2,395.69.   No portion of the rents and profits was derived from the homestead, which was occupied by the widow till her death, Oct. 4, 1869, and after that by the plaintiffs until it was sold May 7, 1870, for $7,000, to pay debts.   One-third of an annuity of $400, was by will of the late Iddo Kimball, father of the deceased, charged upon certain of the real estate, which the intestate inherited from his father, but the rents and profits received from the land upon which the annuity was charged, largely exceeded the amount of such annuity, about one-half of the intestate's real estate not being subject to this charge at all.   The repairs made were necessary, the taxes a lien upon the property, and the commissions were reasonable.   The whole real estate sold for about $60,000

*Rice & Hall*, for the plaintiffs.

Under the common law, which our statutes have not changed in this respect, rents and profits issuing out of real estate belong to the heirs, and not to the administrator or executor of the deceased, whether the estate be solvent or insolvent.   *Cole v. Patterson*, 25 Wend., 456 ; *Duppa v. Mayo*, 1 Saunders, 287 ; *O'Brannon v. Roberts*, 2 Dana, 54 ; *Dixon v. Nichols*, 39 Ill., 372 ; *Dean v. Dean*, 3 Mass., 260 ; *Drinkwater v. Drinkwater*, 4 Mass., 357 ; *Willard v. Nason*, 5 Mass., 240 ; *Hays v. Jackson*, 6 Mass., 154 ; *Hathaway v. Valentine*, 14 Mass., 501 ; *Gibson v. Farley*, 16 Mass., 280 ; *Stearns v. Stearns*, 1 Pick., 158 ; *Newcomb v. Stebbins*, 9 Metc., 544 ; *Boynton v. P. & S. R. R.*, 4 Cush., 467 ; *Lobdell v. Hayes*, 12 Gray, 236 ; *Palmer v. Palmer*, 13 Gray,

326 ; *Almy v. Crapo*, 100 Mass., 220 ; *Towle v. Swasey*, 106 Mass., 100 ; *Heald v. Heald*, 5 Maine, 387 ; *Fuller v. Young*, 10 Maine, 371 ; *Stinson v. Stinson*, 38 Maine, 593 ; *Mills v. Merryman*, 49 Maine, 65. The mechanics' liens were claims payable primarily out of the personalty. *Plimpton v. Fuller*, 11 Allen, 139 ; *Hewes v. Dehon*, 3 Gray, 205.

*Gould & Moore*, for the defendants.

The common law was changed by the Act of 1835, c. 191, and R. S. of 1841, c. 109, which by implication give the possession of the real estate of a deceased insolvent to the administrator. And he is to account in the probate court for the rents, &c. R. S., c. 64, § 54.

If the heirs are entitled, they must resort to the probate court for a decree of distribution. A part of the heirs cannot join to recover their shares of such rents.

PETERS, J. The main question in this case is, whether the rents and profits of the real estate of a deceased insolvent debtor, until it is sold for the payment of debts, belong to the heirs at law of such deceased person, or to his creditors.

It was early decided in the case of *Gibson v. Farley*, 16 Mass., 280, that the heirs were entitled to them. That has been the law in that Commonwealth ever since. *Stearns v. Stearns*, 1 Pick., 158 ; *Newcomb v. Stebbins*, 9 Metc., 544 ; *Boynton v. P. & S. R. R. Co.*, 4 Cush., 467 ; *Lobdell v. Hayes*, 12 Gray, 236 ; *Towle v. Swasey*, 106 Mass., 100.

The decisions in this State have been to the same effect, although perhaps the precise point, as now presented, has never before been directly and necessarily passed upon by our court. It seems to have been assumed that the doctrine was a settled one. Mellen, C. J., in the opinion in *Fuller v. Young*, 10 Maine, 371, after stating the question decided in *Gibson v. Farley, supra*, and approving that case, says : "these principles are firmly settled." And so it was regarded in other cases. *Heald v. Heald*, 5 Maine,

387 ; *Stinson v. Stinson*, 38 Maine, 593 ; *Mills v. Merryman*, 49 Maine, 65. We are clearly of the opinion that the conclusion, established in these numerous and unopposed authorities of both the States, is sustained by familiar common law principles, which cannot be disregarded by us, until we are required to do so by some legislative act.

But the defendants contend that the law, as declared in the foregoing cases, has already been abrogated by certain statutory provisions alleged to be inconsistent therewith. This position is not tenable, as an examination of the acts referred to, will show. By R. S., c. 64, § 19, one condition of an administrator's bond is that, in case of insolvency, he shall account for treble the amount of injury done by him, or with his consent, upon the real estate of the deceased, by any "waste or trespass" committed thereon ; and for such damages as he recovers for like waste or trespass committed by others. This refers to an injury to the freehold, such as will lessen its value when sold for debts, and not to its use and occupation. The liability is only for an "injury done to the real estate." This section not only does not deprive the heirs of a right of possession until the land is sold, but it provides to some extent for the necessities of such a possession, by exempting from liability to trespass, the cutting down of any trees that may be required "for repairs or fuel for the family of the deceased."

The defendants regard section 54 of the same chapter as having an important bearing upon this point, wherein it is provided that every administrator shall be chargeable in his account "with all the interest, profit and income, that in any way come to his hands in his said capacity from any estate of the deceased ;" and our attention is called to the fact that the Massachusetts statute, otherwise similar to ours, reads "from any personal estate of the deceased." But it must be noticed that the liability is only to account for whatever may come to his hands "in his said capacity" as administrator. Rents and profits do not come to him as an administrator, but as an agent of the heirs to whom they belong. By consent or agreement of the heirs they may be used as assets,

Kimball v. Sumner.

in which case the administrator should account for them accordingly. *Palmer v. Palmer*, 13 Gray, 328. By the next section (55) it is provided that, if the administrator himself occupies, he shall account for the rents to the heirs; and it is not to be supposed that any different liability would be established where he collects the rents of another.

Section 20, c. 66, is also cited by the defendants to show that, in case of an insolvent estate, an administrator may recover damages even against "an heir or devisee" for waste or trespass committed upon the real estate. This is where such trespass subtracts from the permanent value of the estate, as explained before.

It is argued that by a necessary implication these different provisions confer upon an administrator the right of possession; that the possession necessarily gives the right to take the rents; and that, in such cases, they must be accounted for as assets. But the use and occupation of the real estate by the heirs, is not to be regarded as at all inconsistent with any of the obligations imposed upon executors and administrators. Each party may sustain an action of trespass for an injury to the interests respectively represented by them. Trespass *quare clausum* may be maintained by the owner of land for an injury to the freehold, though it be in the occupation of a tenant at will; and so can the tenant maintain such an action even against the owner of the freehold for an invasion of his rightful possession. *Bartlett v. Perkins*, 13 Maine, 87; *Davis v. Nash*, 32 Maine, 411; *Brock v. Berry*, 31 Maine, 293.

A further point taken in defence is, that the heirs cannot maintain an action at law for the rents, but that the remedy is by an adjustment in the probate court. This objection is answered by the fact that the probate court does not necessarily have any jurisdiction over the rents. The administrator neither has the right against the consent of the heirs, nor is he required, to occupy the estate or collect rents therefrom. He may receive the income of real estate by the request of the heirs or with their acquiescence. He would not be regarded as a trespasser in so doing, unless done

in opposition to their interests, or in defiance of their wishes. It is often convenient, and sometimes of decided advantage, for him to do so; as where the heirs are minors without guardians; or are abroad; or unacquainted with the management of affairs; and where the administrator may be himself an heir, or having intimate business or family relations with the estate, and in other cases. In many cases there is an understanding or agreement, that the administrator shall take the rents and account for them as assets for the benefit of the estate, where such a course may save a sale of the real estate for debts, or where the heirs get the advantage of them in the general distribution. In such case the administrator, as before intimated, would account in the probate court for such rents with the general assets according to such agreement, but not necessarily by force of any requirements of the statute. Such we believe to be a somewhat common practice. Nothing appears here, however, to warrant a supposition that any arrangement exists which would bar these plaintiffs of the usual remedy at law. *Palmer v. Palmer*, 13 Gray, 328, *supra; Almy v. Crapo*, 100 Mass., 218. See also the other Massachusetts cases, cited before.

It is further objected that three of the heirs, there being four living, cannot properly be joined as plaintiffs in the same suit. Whether tenants in common, situated as these are, have an election of suing either jointly or severally; or whether the remedy must be joint and not several, or *vice versa*, are questions attended with some difficulty. It was a familiar rule of the common law, that in real actions, tenants in common should sever because their estates are several; and must join in actions for an injury to their real estate because the damages are common to both estates, and belong to them jointly;—these rules are now somewhat modified by statute;—and that in actions *ex contractu* they must join or sever according to the terms of the contract sued. If the demise is a joint one, and an entirety of rent is reserved, the action should be joint, but if reserved separately should be several. It is easy to see that tenants in common can make leases jointly or

severally as they please. But the difficulty is, to decide what the contract is, in this respect, when made purely by an implication of law, unaffected by any act whatever, of the parties themselves. But as the heirs could make either a joint contract or several contracts, in leasing their real estate, when the contract is made by themselves, it seems to us entirely reasonable to allow them to elect how it shall be considered in that respect, when the contract is made for them by operation of law. If justice is done between parties by permitting several actions, the defendants have no ground of complaint; if on the other hand, the remedy pursued against them should be joint, we think such a rule is founded upon principle and good sense, and may be fairly deducible from the authorities, although all the cases do not agree.

*Sherman v. Ballou*, 8 Cowan, 309; *Marshall v. Mosely*, 21 N. Y., 287; 2 Dane's Ab., 228, 449; *Martin v. Crompe*, 1 Ld. R., 340; 1 Chitty's Pl., 9; Taylor's Land. & Ten., § 114, *et seq.;* Washburn's Real Law, Title,—Actions by Tenants in Common.

We are satisfied, however, from the rule in all analagous cases, that the action must be either joint or several; and as it is neither in this case, that for that reason the present action cannot be maintained.

We think it results from the principles established in the Maine and Massachusetts cases, already approved in this opinion, that no deductions should be made from the rents collected, for- the mechanics' liens, or the insurances paid, or for the annuities paid of $815.55. These were a charge upon the real estate rather than upon the rents and profits thereof, as long as there were no judgments to enforce or any possession taken or claimed to be taken on account of any of them. No other items are in dispute.

*Plaintiffs nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.